UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| BECKY E. GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 4:08-CV-10 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | (MATTICE/CARTER) |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability insurance benefits and Supplemental Security Income under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Court File No. 13) and Defendant's Motion for Summary Judgment (Court File No. 15).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was forty-nine years old on the date of the ALJ's decision (Tr. 20). She has an eleventh grade education, and had past work experience as a motel housekeeper (*id.*). She alleges disability from May 31, 1997 (Tr. 15).

1

## Application For Benefits - Administrative Proceedings

This is an action for judicial review of Defendant's final decision that Plaintiff was not entitled to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff filed her DIB and SSI applications on December 11, 2003, alleging disability from February 21, 2003 (Tr. 15). ALJ K. Dickson Grissom held a hearing on April 24, 2006 (Tr. 277). On February 20, 2007, the ALJ issued his decision denying Plaintiff benefits because she retained the ability to perform work that exists in significant numbers in the national economy and was not disabled through any time through the date of the decision (Tr. 20-21). The Appeals Council's denial of review left the ALJ's decision as the Commissioner's final decision (Tr. 5). Plaintiff now seeks review under 42 U.S.C. § 405(g).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were supported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v.*

2

*Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (*citing Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

<u>How Disability Benefits Are Determined</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. The five-step analysis is sequential because if, at any step, the claimant is found to be not disabled or to be disabled, then the claim is reviewed no further. 20 C.F.R. § 404.1520(a). The following are the five steps in the analysis:

Step 1: Is claimant engaged in substantial gainful activity? If so, claimant is not disabled. 20 C.F.R. § 404.1520(b).

Step 2: Does claimant have a "severe" impairment or combination of impairments that

3

significantly limits claimant's ability to do basic work activities, and will foreseeably result in death or last at least twelve months? If not, claimant is not disabled. 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521.

Step 3: Does the claimant's impairment meet or equal the criteria of an impairment described in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant is disabled, and the analysis may end without inquiry into the vocational factors. 20 C.F.R. § 404.1520(d). If inquiry is made into vocational factors, after step three but before step four, the Commissioner evaluates a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e)-(f); 404.1545.

Step 4: Does claimant's RFC permit claimant to perform claimant's past relevant work? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f).

Step 5: Does the claimant retain the RFC to perform other work in the economy? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

The burden of proof is upon the claimant at steps one through four to show disability. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Once the claimant has demonstrated the extent of claimant's RFC at step four, the burden of production shifts to the Commissioner to show that there is work in the national economy that may accommodate claimant's RFC. *Id.*

ALJ's Findings

The ALJ concluded at step five of the sequential analysis that Plaintiff was not disabled because she could perform work existing in significant numbers in the national economy (Tr. 20-21). The ALJ made the following findings in support of the decision, which are conclusive if they are supported by substantial evidence in the record:

4

1.  The claimant meets the insured status requirements of the Social Security Administration only through December 31, 2002 and thus is not entitled to Disability Insurance Benefits.

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(c)).

3.  The claimant has the following severe impairments: disorders of the back, depression, panic disorder with agoraphobia, and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work. She is able to lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit for a total of 6 hours and stand/walk for a total of 6 hours of an 8-hour workday. She has postural limitations which restrict her from climbing and only occasional stooping, bending, crouching, and crawling. She is restricted from any overheard [sic] reaching. She has non-exertional limitations resulting from her mental impairments which result in Part B functional limitations that are mild in activities of daily living; mild to moderate in social functioning; and mild to moderate in concentration, persistence, or pace. There is no evidence that she has experienced episodes of decompensation. She would do best with simple jobs and casual contact with others.

6.  The claimant's residual functional capacity has prevented her from being able to perform her past relevant work (20 CFR 416.965). The vocational expert testified that the claimant's past relevant work as a motel housekeeper is classified as medium, exertionally, and unskilled. This conclusion is consistent with the job descriptions found in the Dictionary of Occupational Titles, pursuant to SSR 00-4p. Since the undersigned has determined that the claimant is limited to light exertional work, she is unable to return to her past relevant work.

7.  The claimant was born on January 1, 1958, and is 49-years-old which is defined as a "younger individual" (20 CFR 416.963).

8.  The claimant has an 11th grade education and is able to communicate in English (20 CFR 416.964).

9.  The claimant has not acquired work skills that are transferrable to other occupations within the residual functional capacity determined (20 CFR 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 416.960(c) and 416.966).

11.    The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

## Issues Presented

Plaintiff raises these issues in challenging the ALJ's decision (Doc. 14, pp. 3-4):

i.     The ALJ's finding that Plaintiff's mental limitations were not sufficiently severe is unsupported by substantial evidence, particularly in view of the well-supported medical assessment of treating mental health professional FNP Rigsby.

ii.    The ALJ's finding that Plaintiff's physical limitations were not sufficiently severe is unsupported by substantial evidence, particularly in view of the medical assessment of treating source PNP Rumage that is well-supported by the objective evidence.

iii.   The ALJ's determination that Ms. Griffith was not a credible witness is unsupported by substantial evidence. Particularly, the ALJ's decision fails to provide any supporting rationale for this credibility determination.

## Relevant Medical Evidence

Plaintiff was primarily treated by Kimberly Rigsby, a Family Nurse Practitioner (FNP) (Tr. 147-222), and April Rumage, a Psychiatric Nurse Practitioner (PNP) (Tr. 89-111; 223-241; 245-51). Plaintiff was examined for the purposes of her disability claim by Timothy Fisher, D.O. (Tr. 112-15; 252-60); Mary Kay Matthews, LPE, and Harry Steuber, Ph.D. (Tr. 116-21); Stephen Hardison, M.A. (Tr. 261-69); Frank Edwards, Ph.D. (Tr. 122-138); and, Dr. Lavely, Jr. (Tr. 139-146).

*Kimberly Rigsby*[1]

Kimberly Rigsby is a FNP who was treating Plaintiff's physical conditions, which primarily

---

[1]The record also contains reports of mammograms and other procedures or conditions that Plaintiff has not asserted have caused her disability (*e.g.* Tr. 161) and thus the Court will discuss these no further. Furthermore, Plaintiff has some reported issues with asthma and upper respiratory issues (*e.g.* Tr. 168), but the extent those may limit the environments in which she can work (Tr. 149) does not appear as an issue in Plaintiff's appeal to this Court (*see* Doc. 14). In light of the variety of environments involved in the jobs discussed by the vocational expert which Plaintiff would be capable of performing, an environmental limitation does not appear as though it would have negated Plaintiff's ability to adapt to employment even had the issue been raised (*see* Tr. 296).

6

dealt with her back pain (*see* Tr. 165).

On July 25, 2003, Ms. Rigsby assessed Plaintiff's complaints of left arm and back pain (Tr. 179). On August 12, 2003, Ms. Rigsby met with Plaintiff and reported she had continued back, arm, and neck pain (Tr. 173).

On October 15, 2003, Dr. Don Arms, orthopedic surgeon, drafted a letter to Ms. Rigsby, suggesting conservative care for her spinal problems, and surgery for her shoulder, as he opined her shoulder would not respond to conservative treatment (Tr. 172).

On December 15, 2003 and April 2, 2004, Ms. Rigsby assessed Plaintiff had "low back pain" (Tr. 162, 170). On June 30, 2004, Plaintiff visited Ms. Rigsby for a check-up and refill of her medications (Tr. 159). Plaintiff complained of "lots of pain in her back" (*id.*).

On September 29, 2004, Ms. Rigsby examined Plaintiff due to complaints of abdominal pain and nausea (Tr. 153). An abdominal ultrasound revealed no abnormalities (Tr. 152).

On January 4, 2005, Plaintiff visited Ms. Rigsby for a sinus infection, but also complained of a flare up of back pain which radiated into her hips and legs (Tr. 214). On April 11, 2005, Ms. Rigsby diagnosed Plaintiff with carpal tunnel syndrome, degenerative disc disease, and "low back pain" (Tr. 212). On July 6, 2005, Plaintiff presented with increased neck and back pain, and Ms. Rigsby opined Plaintiff may need surgery on her hands if numbness in her arms and hands continued (Tr. 202-03). On September 12, 2005, Ms. Rigsby again spoke of Plaintiff's "low back pain" (Tr. 201).

Included in Ms. Rigsby's records were various test results. On March 29, 2005, MRI's were taken showing some protrusions and evidence of degeneration in Plaintiff's spine (Tr. 221). On June 16, 2005, additional MRI's were taken, showing mild degenerative disc disease and very mild

7

degenerative spinal stenosis (Tr. 217).

On October 3, 2005, Ms. Rigsby wrote two "To Whom It May Concern" letters, stating Plaintiff would not be able to work at that time, due to the following medical conditions, which she expected would last longer than thirty days: low back pain with radiculopathy, overactive bladder, hyperlipidemia, displaced disc, degenerative disc disease, and spinal stenosis (Tr. 196-97).

The record includes reports from July 31, 2003, which appear to be results from various procedures which were not signed or reviewed by a radiologist (*see* Tr. 175-77). They report Plaintiff had no abnormalities in her clavicle, left shoulder, left arm, cervical spine, and left humerus; minor degenerative changes were present in her thoracic spine, but no other abnormalities were present (*id.*).

On April 11, 2005, Ms. Rigsby completed a Medical Opinion Form, where she opined Plaintiff could: sit 2 hours out of an 8 hour workday in 30 minute increments; stand or walk sit 2 hours out of an 8 hour workday in 30 minute increments; infrequently (i.e. very few times a day) lift 1-10 pounds; never lift 11 pounds or more; never bend at the waist; and, could infrequently reach above her shoulders, stand on hard surfaces, and use her hands for fine manipulation (Tr. 148). Plaintiff would also need 30 minutes rest for every 1 hour of work, and would need to elevate her lower extremities at least one hour per day (Tr. 149). Plaintiff was limited in her ability to work in various environments due to allergies and bronchitis; would have memories or concentration lapses for several hours 3 or more days a week; had moderately severe pain; and, could not be reasonably expected to be reliable with an 8 hour-a-day, 40-hour-a-week job (Tr. 149-50).

*April Rumage*

April Rumage is a PNP who was treating Plaintiff's mental conditions, which primarily dealt

8

with her depression and anxiety (Tr. 109-111, 241).

Ms. Rumage recognized numerous sources for Plaintiff's anxiety, including: her mother's illness (November 4, 2002 - Tr. 105; February 9, 2004 - Tr. 90; April 7, 2004 - Tr. 240); Plaintiff's own medical issues (June 25, 2003 - Tr. 97; August 20, 2003 - Tr. 96; July 12, 2004 - Tr. 238); and, her disability application (April 30, 2003 - Tr. 100; May 27, 2003 - Tr. 98). On several examinations from April 19, 2002 (Tr. 94) to April 7, 2004 (Tr. 241), Ms. Rumage rated Plaintiff with a Global Assessment of Functioning (GAF) score of 50 (*see also* Tr. 92, 99, 104, 110, 111).

On August 27, 2003, Ms. Rumage completed an "Assessment of Mental Limitations" (Tr. 245-47). In that assessment, Ms. Rumage rated as "poor" Plaintiff's ability to independently operate in social interactions, concentrate and timely complete projects, adapt to stressful situations, follow work rules, deal with works stress, and deal with the public (Tr. 246-47). Ms. Rumage rated Plaintiff's ability to maintain her personal appearance and demonstrate reliability as "fair" (Tr. 247).

*Mary Kay Matthews and Harry Steuber, Ph.D.*

Mary Kay Matthews, Licenced Psychological Examiner, and Harry Steuber, Ph.D., Licensed Psychologist, examined Plaintiff on April 27, 2004 for Tennessee Disability Determination Services (Tr. 116-21). They noted Plaintiff had neatly applied make-up prior to the assessment and drove herself to the assessment site (Tr. 116). They noted that Plaintiff was likely in the low average range for intelligence and had symptoms consistent with depression and anxiety disorders (Tr. 118). Plaintiff was able to name the current president and give the colors of the flag (Tr. 118). They opined that Plaintiff was not limited in her ability to relate to others, and could manage her own funds, if awarded disability benefits (Tr. 119). They further opined she was not limited in her ability to understand, remember, and carry out simple instructions; would be mildly limited in her ability to

9

maintain pace and motivation; would not be limited in her ability to adapt to changes; and, would be moderately limited in dealing with everyday stressors in the workplace (Tr. 119-20).

*H. Frank Edwards, Ph.D.*

Frank Edwards, Ph.D., completed a Mental Residual Functional Capacity Assessment on May 28, 2004 (Tr. 122-38). Dr. Edwards opined Plaintiff could remember simple instructions, but was moderately limited in remembering more detailed ones; was moderately limited in maintaining focus; could interact with others; could respond to changes in her work setting; could travel in unfamiliar places through public transit; and, was moderately limited in setting goals for herself (Tr. 122-24). Dr. Edwards noted Plaintiff had anxiety and depressive disorders (Tr. 125, 128, 130), which caused mild limitations in daily activities and social functioning, and moderate limitations in maintaining concentration (Tr. 135). Dr. Edwards found allegations of post-traumatic stress disorder (PTSD) and agoraphobia not credible - noting that Plaintiff seemed to believe she had these conditions, but no medical or symptom support was present (Tr. 137).

*Dr. Lavely, Jr.*

Dr. Lavely, Jr. completed a physical capacity assessment on August 6, 2004 (Tr. 139-46). Dr. Lavely opined Plaintiff could: lift 20 pounds occasionally; 10 pounds frequently; stand and/or walk for 6 hours of an 8 hour day; sit for 6 hours of an 8 hour day; push and/or pull in conformity with aforementioned limitations; and, occasionally climb stairs, balance, stoop, kneel, crouch, and crawl (Tr. 140-41).

*Timothy Fisher*

Timothy Fisher, D.O., examined Plaintiff twice for Tennessee Disability Determination Services (Tr. 112-15; 252-60). The first examination was on May 13, 2004 (Tr. 112). Dr. Fisher

noted that Plaintiff had some mobility issues - having difficulty performing a heel-to-toe gait, and being unable to squat due to complaints of pain (Tr. 114). Dr. Fisher tested the force potential for Plaintiff's right and left hands; producing readings of 20, 20, 30, and 22 pounds for her right hand, and 10, 12, and 12 pounds for her left (Tr. 114-15). Based upon the totality of his examination, Dr. Fisher opined Plaintiff could do jobs that required standing and could grip objects weighing 15 pounds frequently and 15-25 pounds occasionally (Tr. 115).

The second examination was on August 23, 2006 (Tr. 252-260). Dr. Fisher discussed Plaintiff's claims of shoulder and back pain, but noted that Plaintiff "was a very poor historian when asked what problem that her back caused her in regards to work" (Tr. 252).

Dr. Fisher also completed a Medical Source Statement on August 23, 2006 (Tr. 257-60). In it, Dr. Fisher opines Plaintiff's impairment did not affect her ability to lift or carry things, push or pull objects, or stand, work, or sit (Tr. 257-58). Dr. Fisher further opined she could occasionally (i.e. less than one-third of the time) climb stairs, balance, kneel, crouch, crawl, and stoop (Tr. 258). Dr. Fisher also stated Plaintiff's ability to reach in all directions, and handle and manipulate things was unlimited (Tr. 259).

*Stephen Hardison, M.A.*[2]

Stephen Hardison, a Psychological Examiner, assessed Plaintiff on August 30, 2006 for Tennessee Disability Determination Services (Tr. 261-69). In the examination, Mr. Hardison noted Plaintiff's responses were slow, and she could not name the president or the colors of the flag other than red (Tr. 264). Mr. Hardison had misgivings as to whether Plaintiff was legitimately unable to

---

[2]Stephen Hardison, M.A. is identified as a "Senior Psychological Examiner" (Tr. 266). It is noted for the sake of clarity that the ALJ appears to have mis-identified Mr. Hardison as a medical doctor (Tr. 19). There is no indication, nor has any argument been made, that this difference would afford more or less weight to his opinion.

answer questions in the mental status exam (*see id.*).  Mr. Hardison opined Plaintiff was likely of

low average intelligence (*id.*).  He noted that Plaintiff's self-reports of depression and anxiety

indicated some level of emotional difficulty (*id.*).  Ultimately, Mr. Hardison opined Plaintiff could

carry out one- or two-step instructions, but may have difficulty with more (Tr. 265).  He found only

mild limitations concerning Plaintiff's ability to interact with people or deal with changes in a work

environment (*id.*)

<u>Hearing Testimony</u>

At the administrative hearing on April 24, 2006, Julian Nadolsky, vocational expert, testified

concerning Plaintiff's work capacity (Tr. 293-298).  Dr. Nadolsky was presented with the following

limitations: light work; no more than occasional climbing, stooping, bending from the waist to the

floor, crouching, or crawling; no overhead reaching; no more than simple, repetitive, non-detailed

tasks; no more than casual, infrequent contact with co-workers or the public; direct and non-

confrontational supervision; and, infrequent or gradually-introduced changes (Tr. 295).  Based upon

these limitations, Dr. Nadolsky testified that Plaintiff would not be able to return to her prior

relevant work - motel housekeeping - but could work in light-work jobs such as a folder, sorter, or

bagger in a laundry or dry cleaning establishment, a decal applier, a wrapping machine tender, a

show packed, or an oil filter inspector (Tr. 295-96).  Dr. Nadolsky further testified that there were

approximately 1,000 jobs that of that kind within 75 miles of McMinnville, Tennessee, and over

1,250,000 nationwide (Tr. 296).  Dr. Nadolsky also testified that Plaintiff could perform these jobs

despite a mild or moderate amount of pain, but would not be able to retain them if she were not able

to work a full eight-hour-a-day, five-days-a-week schedule, or if she was seriously impaired (which

Plaintiff's attorney at the hearing associated with a GAF score of 50) (Tr. 296-97).

Plaintiff argues that there was not substantial evidence to support the ALJ's determination that Plaintiff's mental and physical limitations were not sufficient to preclude her from gainful employment, particularly in view of the testimony of the treating nurse practitioners (Doc. 14, pp. 4-9). Having reviewed the record, the Court finds that the ALJ's decision was based upon substantial evidence.

*Treating Physician Doctrine and consideration of other medical sources*

In reviewing the record, the Court is mindful of two doctrines in effect here. First, an ALJ is normally required to give preferential weight to the medial opinion of a treating physician. The practice of giving preference to the treating physician is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant only once or simply reviewed the medical evidence. *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994) (*citing Bowman v. Heckler*, 706 F.2d 565 (5th Cir. 1983)). However, "[t]he ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence." *Jansen v. Comm'r of Soc. Sec.*, 2008 WL 4534425, *13 (W.D. Mich. 2008) (*citing Cohen v. Sec'y of Dep. of Heath and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992), *and Miller v. Sec'y of Health and Human Servs.*, 947 F.2d 945 (6th Cir.1991)); *accord* 20 C.F.R. § 404.1527(d)(2, 3) (2004); *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 340 (6th Cir. 2008) (An ALJ need not credit "a conclusory opinion...especially if inconsistent with other diagnoses."); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (the ALJ need not give controlling weight to the opinion of the treating physician if it is "not consistent with the other

13

substantial evidence in [the] case record" and is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques"); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (Treating physician's opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence on the record.). It is the function of the ALJ to weigh the entirety of the evidence; the ultimate determination of disability is for the ALJ, not the treating physician. *Kidd*, 283 Fed. App'x at 340-41 (*citing Cutlip v. Sec'y of Health and Human Servs.*, 1994 F.3d 284 (6th Cir. 1994)).

Second, Plaintiff's treating medical professionals were nurse practitioners, rather than medical doctors. A Social Security Interpretation Ruling specifically addresses the appropriate weight given to various medical sources. *See* SSR 06-03p. The SSR does not identify nurse practitioners as "acceptable medical sources," but identifies them as "other sources." *Id.* "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* The SSR has recognized that nurse practitioners "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be

14

evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . ." *Id.* "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals. However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* (internal quotations omitted).

*Consideration of mental limitations*

In relation to her mental limitations, Plaintiff argues the ALJ erred in finding Plaintiff to have only mild to moderate work-related limitations, which could not preclude performance of simple jobs with casual contact with others (Doc. 14, p. 4) because (1) PNP Rumage assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 50, which indicates serious impairments, precluding friends and employment (*id.*, p. 5); (2) PNP Rumage opined Plaintiff's ability to perform daily activities, concentrate, follow rules, deal with the public and work stress was poor (*id.*); (3) the ALJ did not give controlling weight to PNP Rumage's opinions, despite her being

the treating medical source (*id.*, pp. 5-6); and, (4) the ALJ did not consider PNP Rumage's medical opinion (*id.*, pp. 6-7). Having considered the briefs, the ALJ's decision, and the record, the Court finds that there is substantial evidence to support the ALJ's findings and the ALJ did not otherwise err in his decision.

First, the ALJ found PNP Rumage's GAF scoring unpersuasive because it did "not provide many details regarding her diagnosis and offer[ed] little support for a GAF of 50, aside from claimant's own self-reporting" (Tr. 19). Having reviewed the record, PNP Rumage's reports provide little to no specificity as to how she arrived at a GAF score of 50 (*see* Tr. 92, 94, 99, 104, 110, 111, 241). This GAF score, which corresponds to "serious" symptoms or impairments - which would lead to a lack of friends and an inability to keep a job - is contradicted by various reports from physicians (*see* Doc. 14, p. 4). In contrast to Plaintiff having serious mental impairment (a GAF score of 50), Ms. Matthews and Dr. Steuber opined Plaintiff could carry out simple instructions, relate to her co-workers, adapt to changes in her workplace, would only be moderately limited in dealing with stress, and would be mildly limited in her motivation and pace (Tr. 18, 119-120); Dr. Edwards opined Plaintiff was not significantly or only moderately limited in her employment-related abilities (Tr. 18, 122-23); and, Mr. Hardison opined Plaintiff could carry out very basic one- and two-step instructions, and her ability to carry out more detailed instructions "would appear possibly mildly limited" (Tr. 19-20, 265).

As previously stated, "it may be appropriate to give more weight to the opinion of a [nurse practitioner] who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *See* SSR 06-03p. Here, although PNP Rumage had seen Plaintiff more than

16

the examining medical sources, she provided no explanation for her opinion that Plaintiff had a GAF score of 50 (*see* Tr. 92, 94, 99, 104, 110, 111, 241). In contrast, four examining professionals found Plaintiff was capable of achieving proficiency levels which would appear to contradict a GAF score of 50. The ALJ found the four examining medical sources' opinions to be more persuasive, and there is substantial evidence in the record for doing so.

Second, Plaintiff argues the ALJ's decision was in contradiction to PNP Rumage's assessment that Plaintiff's work-related abilities were "poor" (Doc. 14, p. 5). As above, four examining medical sources made findings contradicting PNP Rumage's assessment, providing substantial evidence in the record to support the ALJ's decision.

Third, Plaintiff argues PNP Rumage's assessment should have been given controlling weight as she was the treating medical source (Doc. 14, pp. 5-6). Again, the assessment of a treating nurse practitioner can outweigh the assessments of examining physicians and other medical sources, but that assessment must provide better supporting evidence and a better explanation for the assessment. *See* SSR 06-03p. Here, PNP Rumage's assessments provide little to no explanation for her opinions (*see* Tr. 245-47), and they contradict the assessments of four other medical sources, which provide more detailed analysis (*see* Tr. 116-120; 122-138; 261-66). The ALJ had substantial evidence upon which to prefer the examining sources' assessments to those of PNP Rumage, the treating source.

Fourth, Plaintiff claims the ALJ failed altogether to even consider PNP Rumage's assessment (Doc. 14, pp. 6-7). The ALJ observed that PNP Rummage did not offer a specific opinion that Plaintiff was disabled in her progress notes (Tr. 19). However, the ALJ determined that, based upon those notes, if she had opined that Plaintiff was disabled, the contents of those notes would not support that opinion (*id.*). Plaintiff characterizes this as "the ALJ essentially

admit[ting] to not having considered PNP Rumage's medical opinion" (Doc. 14, p. 6).  This

characterization is at odds with the ALJ's statements: the ALJ did consider PNP Rumage's progress

notes and opinions; pointed out that she did not directly state Plaintiff was disabled; and, for the

sake of completeness, considered whether, if she had stated Plaintiff was disabled, whether that

would have a bearing on his findings (*see* Tr. 19).  The ALJ determined that it would not have,

based upon the ALJ's finding that there was insufficient evidence in her progress notes to support a

disability diagnosis.

In light of the above analysis, the ALJ's findings concerning Plaintiff's mental limitations

should be affirmed.

*Consideration of physical limitations*

In relation to her physical limitations, Plaintiff argues the ALJ erred in finding Plaintiff

could perform a limited range of light work (Doc. 14, p. 7) because (1) the ALJ did not favor the

opinion of FNP Rigsby, who was the treating medical source (*id.*, pp. 7-8); and, (2) the ALJ was

incorrect in stating the objective evidence in the record did not support a finding of disability based

upon Plaintiff's back pain (*id.*, p. 8).  Having considered the briefs, the ALJ's decision, and the

record, the Court finds that there was substantial evidence to support the ALJ's findings and the

ALJ did not otherwise err in his decision.

The ALJ adopted the assessment of Dr. Lavely, Jr. (Tr. 18).  Dr. Lavely's assessment

imposed limitations on Plaintiff's physical abilities which were considerably more permissive than

those of FNP Rigsby (*compare* Tr. 139-146 *to* Tr. 148-150), so much so that FNP Rigsby's

limitations would preclude Plaintiff from an 8-hour-a-day, 40-hour work week (Tr. 149), while Dr.

Lavely's lead to a conclusion that Plaintiff would not be so precluded (*see* Tr. 140).  In granting

preference to Dr. Lavely's opinions, the ALJ determined that Dr. Lavely's assessment was more consistent with the medical record (Tr. 18).

For the ALJ to accept FNP Rigsby's assessment over those of the examining physicians, her assessment must be based upon better supporting evidence and a better explanation for her opinions. *See* SSR 06-03p. Here, the ALJ found the evidence to support Dr. Lavely's assessment. The ALJ determined that FNP Rigsby's treatment records for Plaintiff did not support Plaintiff's allegations of severe pain, because there was no objective medical evidence which supported those claims despite Plaintiff undergoing MRI's and other procedures and examinations (Tr. 19) (*e.g.* Tr. 217, where the June 16, 2005 MRI indicated Plaintiff's disc degeneration disease to be mild, and her degenerative spinal stenosis to be very mild). The ALJ further found that this evidence did not support FNP Rigsby's assessment that Plaintiff was unable to perform even sedentary work (*id.*).

On the contrary, Dr. Lavely's assessment more closely paralleled the limited impairments indicated by the MRI's. Additionally, his assessment was similar to the limitations proposed by Dr. Fisher, another examining physician, who conducted tests on Plaintiff's wrists which measured the force she was able to exert with each of her wrists (Tr. 114-15). Those results supported the opinions of Drs. Lavely and Fisher, and contradicted FNP Rigsby's assessment that Plaintiff could not lift or carry over ten pounds (*see* Tr. 148).

Furthermore, FNP Rigsby did not provide a thorough explanation for her assessment (*see* Tr. 148-150). Her opinions were expressed in a prefabricated medical opinion form, which includes check-marked blanks and almost no explanation as to Plaintiff's limitations (*see id.*). This conclusory approach is mirrored in two letters from FNP Rigsby addressed "To Whom It May Concern," which state Plaintiff has various medical conditions and will be unable to work, but

19

provides little to no detail (Tr. 196-97). Her progress notes are also not determinative on the matter, as they consist of Plaintiff's self-reports of pain, but do not include any assessment by FNP Rigsby of the validity or degree of that pain, or how it would affect her ability to perform work activities (*see* Tr. 151-74, 178-87). Alternatively, Dr. Fisher's assessment, which more closely mirrors the limitations imposed in Dr. Lavely's assessment, includes a discussion of the basis for his opinions, providing a better explanation for his assessment (Tr. 112-15, 252-56).

Plaintiff also argues the objective medical evidence does not support a finding that Plaintiff can perform certain types of work because a March 29, 2005 MRI in the record reported a disc protrusion in Plaintiff's spine was "a likely source for focal back pain" (Tr. 221), and that other reports provide objective evidence of Plaintiff's pain. Plaintiff further asserts this is error because the ALJ does not specifically mention this passage from this MRI anywhere in his decision (Doc. 14, p. 8). As previously discussed, the assessments of Drs. Lavely and Fisher provide a reasoned basis for determining that Plaintiff is capable of some types of work, and their discussion of the medical record is both reasoned and persuasive. The MRI results referenced by Plaintiff (*see* Doc. 14, p. 8) provide no discussion or interpretation as to how they are likely to translate into pain for the patient, the degree and frequency of that pain, or whether that pain would preclude the patient from any employment. Furthermore, the MRI conducted approximately three and a half months later, on June 16, 2005, indicates Plaintiff's disc degeneration disease to be mild, and her degenerative spinal stenosis to be very mild (Tr. 217); these mild conditions would not seem to correspond with pain which would entirely preclude Plaintiff from performing light work. To the extent that Plaintiff would argue otherwise, nowhere in Plaintiff's treating nurse practitioner's report does Ms. Rigsby reference these MRI results as indicative of a complete inability to perform any

20

work-related activities (*see* Tr. 148-50). These MRI results do not preclude the ALJ's decision that Plaintiff was able to perform light work; there is substantial evidence in the record, as discussed above, to support his decision.

*Consideration of Plaintiff's testimony*

Plaintiff argues the ALJ erred in determining she was not a credible witness, because the objective evidence in the record supports Plaintiff's complaints of pain, the ALJ did not provide his rationale for finding her testimony not to be credible, and there is nothing in the record which supports his decision to discount Plaintiff's credibility (Doc. 14, pp. 9-10). Upon reviewing of the ALJ's opinion and the record as a whole, the Court finds that the ALJ's findings concerning her complaints of pain were supported by substantial evidence and conformed with procedural requirements.

In his decision, the ALJ stated that "[a]fter considering the evidence of record . . . [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible" (Tr. 18). Plaintiff challenges this assessment, arguing the evidence in the record supports Plaintiff's complaints of severe physical and mental pain (Doc. 14, p. 10). In making his or her determination, an ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. This Court has already determined above that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not mentally or physically unable to perform certain types of jobs. Plaintiff's argument that the record supports Plaintiff's testimony fails; to the extent some evidence in the record may support Plaintiff's claims of disabling pain, this Court cannot reverse the decision

21

of the ALJ based upon that evidence if, as here, the Court finds substantial evidence exists supporting the ALJ's decision. *See Chater*, 99 F.3d at 782.

However, the ALJ must fully consider Plaintiff's subjective testimony concerning her symptoms and the effects of those symptoms. *See* SSR 96-7p. Plaintiff argues that the ALJ did not, because (1) he failed to expressly state the reasons for not crediting Plaintiff's testimony, and (2) there is "nothing in the record . . . [which] supports his decision to discount Plaintiff's credibility" (Doc. 14, pp. 9-10). Plaintiff's first challenge is grounded in SSR 96-7p, which reads: "[i]t is not sufficient for [the ALJ] to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not credible).'" (Doc. 14, p. 9). In his decision, the ALJ stated that "[a]fter considering the evidence of record . . . [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible" (Tr. 18). The ALJ then continued by discussing the subjective medical evidence - i.e. the opinions of various treating and examining medical sources - and determined that it did not support Plaintiff's statements (*see* Tr. 18-20). The ALJ also reiterated activities Plaintiff engaged in - driving, shopping, preparing meals, doing household chores, reading, and visiting her mother in the nursing home - which would call into question the degree of disability to which Plaintiff claimed (Tr. 18-19) (citing Tr. 137). The ALJ also noted that Dr. Fisher found Plaintiff to be a "very poor historian" when asked what problem her back caused in her work (Tr. 19) (citing Tr. 252). The Court thus finds that the ALJ gave a sufficient basis for why he did not entirely credit Plaintiff's testimony (*see* Tr. 18-20).[3]

---

[3]Although the Court recognizes that the ALJ's decision could have been worded more clearly, his decision sufficiently provides his basis for not entirely crediting Plaintiff's testimony where the ALJ states doing so was "[a]fter considering the evidence of record," and then proceeds to articulate the evidence in the record that supports a conclusion that Plaintiff's

Plaintiff's second argument is also grounded in SSR 96-7p, which reads: "[a]n individual's statements about the intensity and persistence of pain and other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Plaintiff asserts that there is no basis to question the credibility of Plaintiff's testimony. There is substantial evidence in the record that indicates Plaintiff's testimony is not entirely credible, in addition to the evidence discussed above. For example, Plaintiff displayed certain levels of functionality which appeared inconsistent with her own assessment of her abilities - e.g. Ms. Matthews noted that Plaintiff was able to neatly apply make-up prior to her assessment and drove herself to the assessment site (Tr. 116). Also, Dr. Edwards found her allegations of PTSD and agoraphobia not to be credible - stating she seemed to believe she had those conditions, but there was no medical symptoms to support them (Tr. 137). Furthermore, Mr. Hardison noted that her inability to answer certain questions was "somewhat questionable" based upon her responses and behavior (Tr. 264). Considering Plaintiff's testimony, the subjective and objective medical evidence in the case, and the actions and behavior of Plaintiff detailed in the record, the Court finds that the ALJ had sufficient evidence to find Plaintiff's testimony not entirely credible.

---

testimony overstated the severity of her symptoms and inability to work (see Tr. 18-20).

<u>Conclusion</u>

For the reasons stated herein, I RECOMMEND[4] that the Commissioner's decision be AFFIRMED. It is further RECOMMENDED that the Defendant's Motion for Summary Judgment (Court File No. 15) be GRANTED, the Plaintiff's Motion for Judgment on the Pleadings (Court File No. 13) be DENIED, and this case be DISMISSED.

ENTER:

Dated: January 6, 2009          *s/William B. Mitchell Carter*
                                UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).